## GRUHER v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

### No. 22.

1. CONSPIRACY ⬤⇒43(6)—VIOLATION OF SELECTIVE SERVICE LAW—INDICTMENT.
   Indictment charging that defendant conspired with officials of a draft board to violate the provisions of Selective Service Act, § 6 (Comp. St. .1918, § 2044f), charged the commission of an offense against the United States.

2. CONSPIRACY ⬤⇒43(5)—SELECTIVE SERVICE LAW—INDICTMENT—OVERT ACT.
   It was not necessary that an indictment for conspiring to violate Selective Service Act, § 6 (Comp. St. 1918, § 2044f), allege in what manner the overt act would tend to effect the object of the conspiracy.

3. CONSPIRACY ⬤⇒43(5)—SELECTIVE SERVICE LAW—INDICTMENT—OVERT ACT.
   Indictment for having conspired with draft board officials to violate Selective Service Act, § 6 (Comp. St. 1918, § 2044f), held to set forth facts sufficient to constitute an overt act on defendant's part to effect the object of the conspiracy.

4. CRIMINAL LAW ⬤⇒1054(1)—APPEAL—FAILURE TO EXCEPT—EXCUSE.
   Where defendant's counsel took no exception to court's failure to instruct witness to answer question, he having given untenable reason for not answering that it might tend to incriminate or degrade him, counsel cannot excuse his omission by saying in Circuit Court of Appeals that exception would only have shown discourtesy.

5. CRIMINAL LAW ⬤⇒1048—APPEAL—ABSENCE OF EXCEPTION.
   In a federal court, no error can be corrected as a rule unless an exception has been taken.

6. CRIMINAL LAW ⬤⇒656(2)—DUTY OF COURT—ASSISTANCE OR DIRECTION OF WITNESS.
   It is always the duty of a trial court to assist or direct a witness who is stumbling over a technical point, and it cannot be error to ask a witness who declines to answer, without his counsel being present, whether he means to claim his privilege.

7. CRIMINAL LAW ⬤⇒448(12)—EVIDENCE—CONCLUSION OF WITNESS—CONSPIRACY.
   In prosecution for having conspired to violate Selective Service Act, § 6 (Comp. St. 1918, § 2044f), objection to question to witness whether a man who at that time had not been a witness had or had not stated a legal result, that is, the conspiracy, in respect of defendant, was properly sustained.

8. CRIMINAL LAW ⬤⇒419, 420(11)—EVIDENCE—HEARSAY.
   In prosecution for having conspired to violate Selective Service Act, § 6 (Comp. St. 1918, § 2044f), a question as to what a third person told the witness during a conversation regarding the conspiracy was calculated to elicit hearsay testimony.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. CRIMINAL LAW ⬳1048—APPEAL—CORRECTION OF ERROR—ABSENCE OF EXCEPTION.

While Circuit Court of Appeals may notice a plain error, where no exception has been taken, and the error has been specified in the assignment of errors, the right so to do will not be exercised unless it is evident that very serious injustice will result, whether the case is criminal or civil.

In Error to the District Court of the United States for the Southern District of New York.

Kalman Gruher was convicted of having conspired to violate the provisions of the Selective Service Law, and he brings error. Affirmed.

The plaintiff in error, who was the defendant below, and who is hereinafter referred to as the "defendant," has been convicted under an indictment which charged him with having conspired to violate the provisions of section 6 of the Act of Congress of May 18, 1917, c. 15, 40 Stat. 80 (Comp. St. 1918, § 2044f), entitled "An act to authorize the President to increase temporarily the military establishment of the United States," known as the Selective Service Law. The material provision of the section may be found in the margin.[1]

The indictment charged the defendant Louis J. Cherey and Samuel J. R. Bernfeld with having conspired among themselves to violate the provisions of the act. It appears that Cherey was chairman of local board for division 99 of the city of New York, and Bernfeld was a member of the same board and one of the medical examiners of that board. It was the duty of Cherey and Bernfeld to carry into effect the provisions of the act, and in the course of their official duties they were called upon to pass upon the qualifications and fitness of persons who were called by the board for physical examination and to determine the fitness of the persons so called for service in the Army of the United States. The theory of the indictment was that in return for money Cherey and Bernfeld were to aid the defendant by making certain false and incorrect physical examinations and false statements and certificates as to the fitness and liability of persons examined for service under the act.

The indictment concluded as stated in the margin.[2]

---

[1] "Any person charged as herein provided with the duty of carrying into effect any of the provisions of this act or the regulations made or directions given thereunder who shall fail or neglect to perform such duty; and any person charged with such duty or having and exercising any authority under said act, regulations, or directions, who shall knowingly make or be a party to the making of any false or incorrect registration, physical examination, exemption, enlistment, enrollment, or muster; and any person who shall make or be a party to the making of any false statement or certificate as to the fitness or liability of himself or any other person for service under the provisions of this act, or regulations made by the President thereunder, or otherwise evades or aids another to evade the requirements of this act or of said regulations, or who, in any manner, shall fail or neglect fully to perform any duty required of him, in the execution of this act, shall, if not subject to military law, be guilty of a misdemeanor, and upon conviction in the District Court of the United States having jurisdiction thereof, be punished by imprisonment for not more than one year, or, if subject to military law, shall be tried by court-martial and suffer such punishment as a court-martial may direct."

[2] "And in pursuance of and to effect the object of the said conspiracy, the said defendant Kalman Gruher, on the 8th day of August, 1917, did call upon the said defendant Samuel J. R. Bernfeld, at 273 Rivington street, the city and county of New York, in the Southern district of New York.

"And further to effect the object of the said conspiracy, the said defendants Louis J. Cherey and Samuel J. R. Bernfeld, on the 8th day of August, 1917, did have a conversation with certain persons at No. 273 Rivington street, borough of Manhattan, city of New York, Southern district of New York.

"And further to effect the object of the said conspiracy, the said defendants

At the trial defendant moved to dismiss the indictment upon the ground that there were no facts constituting an overt act upon the part of the defendant to carry out the conspiracy alleged in the indictment. The motion to dismiss was denied and the trial proceeded. It is claimed that at the trial the court committed certain errors, but especially erred in failing to direct a verdict of acquittal upon the ground that the facts proven did not establish the crime alleged in the indictment.

The jury returned a verdict of guilty, and the defendant was sentenced to the United States penitentiary at Atlanta for two years. The Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]), § 37, provides that if two or more persons conspire to commit any offense against the United States, or to defraud the United States, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both.

Isidor E. Schlesinger, of New York City, for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Ralph W. Horne, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). There was no error committed in denying the motion to dismiss the indictment.

[1] The indictment specifically charges the defendant with an offense against the United States. It declares that defendant, Cherey, and Bernfeld willfully, knowingly, and feloniously conspired together and agreed among themselves to violate section 6 of the Draft Act. By the express terms of the Draft Act it is made a misdemeanor for any person charged with the duty of carrying into effect any of the provisions of the act, to make any false or incorrect registration, physical examination, exemption, etc., or to fail fully to perform any duty required of him in the execution of the act. Cherey and Bernfeld were members of a board charged with the administration of that act. And an indictment which charges that defendant conspired with these officials to violate the provisions of the act charged him with the commission of an offense against the United States.

[2, 3] The indictment also sets forth facts sufficient to constitute an overt act upon the part of the defendant to effect the object of the conspiracy.

At common law no overt act is necessary to constitute the offense. But under the Criminal Code of the United States some overt act in pursuance of the conspiracy is a necessary element of the offense. United States v. Rabinowich, 238 U. S. 78, 35 Sup. Ct. 682, 59 L. Ed. 1211.

The indictment not only alleges one but three overt acts "in pursuance and to effect the object of the conspiracy." It declares:

Louis J. Cherey and Samuel J. R. Bernfeld did demand from Abraham Leicher, $300 in the city of New York, Southern district of New York; against the peace of the United States and their dignity and contrary to the form of the statute of the United States in such case made and provided. (Sec. 37 U. S. C. C.)"

1. That on August 8th defendant called upon Bernfeld, one of his coconspirators, at a certain specified place in the city of New York.

2. That on the date named his coconspirators, naming them, further to effect the object of the conspiracy, had a conversation with certain persons at a certain specified place likewise in the city of New York.

3. That further to effect the object of the conspiracy his coconspirators demanded of Abraham Leicher $300 in the city of New York.

It is true that in itself there was nothing unlawful in the act of the defendant in calling on Bernfeld. But there is no rule of law which requires an overt act to be an unlawful act. It may be in itself a perfectly lawful act which becomes unlawful only when it is committed "in pursuance of and to effect the object" of the conspiracy. It was not necessary to allege in what manner the overt act would tend to effect the object of the conspiracy. Houston v. United States, 217 Fed. 853, 133 C. C. A. 562; United States v. Wupperman (D. C.) 215 Fed. 135; United States v. Shevlin (D. C.) 212 Fed. 343. And if the allegation that Cherey and Bernfeld, further to effect the object of the conspiracy, did demand from Leicher $300 is not a sufficient allegation of an overt act, then we confess our inability to understand in what the insufficiency consists.

The indictment was in all respects sufficient, and it fully informed the defendant of the offense with which he was charged, and no greater definition of the crime was needed.

[4-6] It appears that while Cherey was on the stand he was asked whether he had any talk with the defendant about receiving any bribe or becoming a party to receiving any money to aid others to evade the draft. He declined to answer without his counsel being present. Thereupon the court said: "You mean on the ground it may tend to incriminate or degrade you?" To which he answered, "Yes." It is alleged that, as the witness in refusing to answer had given an untenable reason, it was the duty of the court to have instructed the witness to answer the question; and that the court suggested a substitute reason which was equally untenable as his answer could not incriminate or degrade, he having already pleaded guilty to the charge. If the court committed error, counsel for defendant shared in it, for he took no exception. He seeks to excuse his omission by saying in this court that an exception under the circumstances would only have shown discourtesy. It is never a discourtesy to take an exception to a ruling. And in a federal court no error can be corrected as a rule unless an exception has been taken. We take, however, this occasion to say that in our opinion it is always the duty of a trial court to assist or direct a witness who is stumbling over a technical point. It cannot be error to ask a witness who declines to answer without his counsel being present whether he means to claim his privilege.

[7, 8] It also appears that one of the Assistant United States Attorneys was called as a witness on behalf of the defendant. He was asked: "Did you have a conversation with Mr. Cherey on Saturday last in your office?" He replied: "Yes, sir." Then he was asked:

"And Cherey confessed to having entered into a conspiracy with Dr. Bernfeld?" This was objected to. But the court said: "Let him answer." Thereupon the witness said: "I refuse to answer that question." Then he was asked: "Did he at that time tell you that Mr. Gruher in this case had no connection with the conspiracy between Dr. Bernfeld and Cherey?" This was also objected to and the objection was sustained. Counsel for defendant again took no exception and is therefore not entitled to allege the error if error there be. We may, however, point out that the question asked was whether a man who at that time had not been a witness in the case had or had not stated a legal result in respect of the defendant, for conspiracy is a legal result. And it may be added that the matter was in violation of the hearsay rule.

[9] Whatever the practice in the state courts may be, the rule in the federal courts is established as already intimated that the Circuit Courts of Appeals will not notice errors in the admission or exclusion of testimony unless an exception was taken in the court below. While the court may notice a plain error when no exception has been taken and the error has been specified in the assignment of errors, the right to do so will not be exercised unless it is evident that very serious injustice will result. The right is not lightly to be invoked, in either a criminal or a civil case. In the case now before the court, we do not feel called upon to send this case back for a new trial on any such ground, although counsel ask us to do it to prevent "a shocking injustice." We are unable to see that any shocking injustice is being committed. The testimony affords ample proof of the conspiracy and of defendant's guilt.

Judgment affirmed.